## SENA ODENBREIT v. ANNE UTHEIM.[1]

November 5, 1915.

Nos. 19,377—(54).

**Agreement to adopt child — enforcement of property rights.**

1. Where under an oral contract to adopt an infant and to give her a specified portion of the property of her foster parents at their death in consideration of the relinquishment of all parental rights by her natural parents, the child is reared as the child of her foster parents and renders to them all the duties and services of a daughter until she attains her majority, and such foster parents die without having legally adopted her and without making any provision for her by will or otherwise, the property rights provided for in such contract may be enforced in equity; and where the property consists of real estate, or such rights have not been submitted to the probate court for determination, they are not barred by a final decree of the probate court assigning the property to others.

**Same.**

2. If the contract merely provided that she should be adopted, and contained no express provision in respect to property rights, she became entitled to the property rights given by statute to an adopted child.

**Equality of children before the law.**

3. The property rights of an adopted child are now the same as those of a natural child.

[1] Reported in 154 N. W. 741.

---

Note.—As to specific enforcement of contract to leave property to child in consideration of his living with promisor, see notes in 44 L.R.A.(N.S.) 756; and 46 L.R.A.(N.S.) 1134.

**Will — disinheriting child.**

4. A parent may, by will, entirely disinherit a child.

**Enforcement of rights by omitted child.**

5. The rights given by section 7260, G. S. 1913, to a pretermitted child must be enforced in the probate court, and if not so enforced are barred by the final decree of that court.

**Pleading — complaint.**

6. The allegations of the complaint fail to show that the contract in controversy contained any express provision to give plaintiff a portion of the property of her foster parents. Consequently she has no greater rights in such property than are given by statute to an adopted child, and such rights were barred by the final decree of the probate court assigning the property to the devisee named in the will.

Action in the district court for Lac qui Parle county. The substance of the complaint will be found at the beginning of the opinion. From an order sustaining a demurrer to the amended complaint, plaintiff appealed. Affirmed.

*G. H. Smith,* for appellant.

*N. F. Soderberg,* for respondent.

TAYLOR, C.

Appeal by plaintiff from an order sustaining a demurrer to the complaint.

The complaint contains allegations to the effect that plaintiff's mother, in 1880 and while on her death bed, requested Anfin Utheim and Marith Utheim, his wife, who were childless, to adopt plaintiff who was then one and one-half years of age; that they consented on condition that plaintiff's father renounce all claims and parental rights to plaintiff; that plaintiff's father made the required promise, and thereupon the Utheims took plaintiff into their home, gave her the name of Sena Utheim, and cared for and reared her as their child; that plaintiff believed that the Utheims were her parents until she was ten years of age, when she was told of her true parentage by a neighbor; that she reported to the Utheims what she had been informed and was told by them "that she had once had other parents, but that they had adopted her, and that she was now their child and

heir, and had no other parents but belonged to them, and she believed them"; that frequently thereafter they informed plaintiff, "that she was their child and that their property would go to her on their death"; that the church record of the church of which Anfin Utheim was pastor contains a statement in his handwriting and signed by him and his wife that plaintiff was their adopted child and their heir; that Marith Utheim died in January, 1897, and at her instance while on her death bed Anfin Utheim again promised to "continue to treat plaintiff as his child and make her his heir"; that plaintiff lived with said Anfin and Marith Utheim until the death of Marith and thereafter with said Anfin until she was in her twentieth year, and at all times treated and regarded them as her parents, and gave them the love, and rendered to them all the services and duties of a daughter; that after the death of said Marith, said Anfin married the defendant; that in August, 1913, said Anfin died leaving a will, executed in 1910, by which he gave all his property to defendant; that the property consisted principally of the real estate described in the complaint; and that the will was duly probated and the entire estate assigned to defendant.

Anfin and Marith Utheim were childless. They took plaintiff into their home and family at the age of one and one-half years, and she lived with them as a member of their family until after she had attained her majority. During all this time they treated and regarded her the same as if she had been their own natural child; and she treated and regarded them the same as if they had been her natural parents, and at all times performed the duties and services and gave them the companionship and affection of a daughter. If in doing so plaintiff fully performed on her part the terms of an oral contract, made by her natural parents for her benefit, which provided that, in consideration for such performance, she should receive the property of Anfin Utheim, or a specified portion thereof, at his death, she had the right at his death to enforce specific performance of such contract. Svanburg v. Fosseen, 75 Minn. 350, 78 N. W. 4, 43 L.R.A. 427, 74 Am. Rep. 490; Stellmacher v. Bruder, 89 Minn. 507, 95 N. W. 324, 99 Am. Rep. 609; Laird v. Vila, 93 Minn. 45, 100 N. W. 656, 106 Am. St. 420; Richardson v. Richardson, 114 Minn. 12, 130 N. W. 4; Haubrich v. Haubrich, 118 Minn. 394, 136 N. W. 1025; Fiske v.

Lawton, 124 Minn. 85, 144 N. W. 455; Brasch v. Reeves, 124 Minn. 114, 144 N. W. 744; Robertson v. Corcoran, 125 Minn. 118, 145 N. W. 812. If the contract provided merely that they should adopt her as their child and did not contain any express provision that she should receive the property of the Utheims, or a specified portion thereof, she has no other or greater rights than would have been given her by the statute in case she had been legally adopted. Had she been legally adopted, she would have precisely the same rights, under the statute as it now exists, that are given by statute to a natural child.

Unless a parent has bound himself by contract, based upon a sufficient consideration, to give his property, or a·specified portion thereof, to his child, he may by will dispose of all the property that would otherwise descend to the child in any manner that he sees fit. He may entirely disinherit the child. The statute provides however: "If a testator omits to provide in his will for any of his children or the issue of a deceased child, they shall take the same share of his estate which they would have taken if he had died intestate, unless it appears that such omission was intentional, and not occasioned by accident or mistake." G. S. 1913, §7260. The power and duty to determine to whom property passes by will or descends by inheritance is vested in the probate court; and it is the province of that court to determine, in the first instance, whether a pretermitted child is entitled to inherit under the statute above quoted. A child claiming under that statute must enforce such claim in the probate proceedings; and, if he fails to do so and the probate court makes a final decree assigning the property to others, such decree becomes binding and conclusive and operates to bar his claim unless an appeal be taken therefrom in the manner provided by statute.

In the present case the probate court allowed the will and made a decree assigning all the property to defendant thereunder. No appeal was taken from this decree. Assuming that plaintiff, by virtue of the contract, possessed the same rights as a natural child, and no others, she is concluded by the judgment rendered by the probate court, and cannot enforce, in this action, the rights of a pretermitted child.

But if the contract with the Utheims expressly provided, not only that plaintiff should be adopted by them but also that she should receive their property, or a child's share thereof, at their death, a dif-

ferent question is presented. Under such a contract, the rights of plaintiff would not depend upon the will, nor upon the laws of descent, but would be fixed and determined by the contract. Such rights attach to the property of the decedent by virtue of the express contract made by him in his lifetime; and create, or at least may create, a claim of title to the property adverse to the title thereto given by will or by the laws of descent. The determination and enforcement of such rights is ordinarily beyond the jurisdiction of the probate court; and they are unaffected by a decree of the probate court determining the devolution of the property of the decedent, at least unless they have been submitted to that court for determination. Mousseau v. Mosseau, 40 Minn. 236, 41 N. W. 977; Haataja v. Saarenpaa, 118 Minn. 255, 136 N. W. 871; Svanburg v. Fosseen, 75 Minn. 350, 78 N. W. 4, 43 L.R.A. 427, 47 Am. Rep. 490; Laird v. Vila, 93 Minn. 45, 100 N. W. 656, 106 Am. St. 420.

It is true that such contracts were established and enforced in probate proceedings in Kleeberg v. Schrader, 69 Minn. 136, 72 N. W. 59, and Fiske v. Lawton, 124 Minn. 85, 144 N. W. 455; but in each of these cases the claimant voluntarily presented his claim to the probate court, and the property involved consisted wholly of personal property in the hands of the administrator over whom that court had full control. Where the property involved consists of real estate, the probate court has no jurisdiction to determine contested adverse claims thereto, asserted by one whose rights do not rest upon a will or the laws of descent, against those in whom a will or the laws of descent have vested the title to such property. See the cases above cited, and also Caron v. Old Reliable Gold Mining Co. 6 Ann. Cas. 874, and cases cited in note appended thereto. The following excerpt from Haataja v. Saarenpaa, 118 Minn. 255, 259, 136 N. W. 871, applies with equal force to the present case: "While it is true, as insisted by the defendants, that the probate courts have exclusive original jurisdiction over the estates of decedents, and decrees within their jurisdiction are binding until set aside by such courts themselves or reversed on appeal, and are not subject to collateral attack for want of jurisdiction not appearing on the face of the record, it is equally true that these rules do not apply to the instant case; such jurisdiction being purely for the purpose of adminis-

tration. The legal title to the land in controversy was in Herman Hardy at the time of his death, and, he dying intestate, the jurisdiction of the probate court extended to the determination of who were his creditors and to whom the estate passed under the statute upon his death. Claims of parties against the land, not depending upon the law of descent, were not involved in the administration of the estate, and the probate court did not and could not determine the question as to whether the deceased had or had not forfeited his title as to this plaintiff. The decrees of the probate court in no wise determined the rights or duties of the deceased or the defendants towards this plaintiff, growing out of the contract under which the legal title to the land was acquired. State v. Probate Court of Ramsey County, 103 Minn. 325, 115 N. W. 173, and cases cited; 2 Dunnell, Minn. Dig. §7779."

If it appears from the complaint that, at the death of Anfin Utheim, plaintiff was entitled to receive his property, or a child's portion thereof, by virtue of the contract, independent of the laws of descent, she has the right to enforce such contract in the present action notwithstanding the final decree rendered by the probate court.

The remaining question is whether it appears from the complaint that the Utheims contracted to give plaintiff a specified portion of their property. The allegations contained in the complaint consist largely of statements of evidentiary facts rather than statements of ultimate, issuable facts. It nowhere states that either of the Utheims agreed, as a part of the contract, to give plaintiff their property or a specified portion thereof. It alleges that after plaintiff learned that the Utheims were not her parents, they repeatedly made statements to her to the effect that she was their adopted child and heir and "that their property would go to her on their death"; that they made and signed a writing in the church record that she was their adopted child and heir; and that, while Marith Utheim was on her death bed, Anfin Utheim promised to "continue to treat plaintiff as his child and make her his heir." It would seem to be a fair inference from these statements and from all the other facts and circumstances that the Utheims understood and intended that plaintiff should occupy the same position in their family, and have the same right to inherit as a natural child. Alleging the making of these statements cannot fairly be construed as alleging that the Utheims

had made an irrevocable contract to give plaintiff other and greater rights in their property than a natural child would possess, and had deprived themselves of the power to dispose of their property by will. So far as the complaint discloses, the agreement between plaintiff's parents and the Utheims contemplated only that plaintiff should be adopted by the Utheims, and contained no provision whatever in respect to property rights. The Utheims took plaintiff into their family and reared her as their own child pursuant to such agreement; and we think the subsequent statements made by them had reference to this original agreement and the status to which plaintiff was entitled thereunder, and cannot be construed as establishing contractual rights in their property. Especially so in view of the rule that a claim for such contractual rights can be given effect only when clearly and satisfactorily established. To contract to give an adopted child greater rights than the law gives a natural child is contrary to common experience; and if a litigant bases his claim upon such a contract, he should allege such contract, and not leave it to be spelled out from allegations of the making of scattered statements which, in view of the ordinary course of human conduct, are more consistent with a different theory.

Order affirmed.