AMUNDA R. HAUGE v. JOHN A. NORDIN AND OTHERS.[1]

June 12, 1936.

No. 30,817.

*Stiles & Stiles* and *F. J. Donahue,* for appellant.

*John A. Nordin, Lynn S. Helgerson,* and *Case & Case,* for respondents.

STONE, JUSTICE.

The trial of this case without a jury resulted in a decision for defendants. From the order denying her alternative motion for amended findings or a new trial, plaintiff appeals.

The action is for the specific performance of a contract which plaintiff claims to have made with Mrs. Anne L. Hoskins, who departed this life April 4, 1934, at the age of 91. Her later years were those of an invalid but without loss of mental capacity.

[1]Reported in 267 N. W. 432.

494

Plaintiff, a professional nurse, was first employed by Mrs. Hoskins February 3, 1932. The employment was on a full-time basis and the wages first agreed upon $28 per week. Late in the summer or early in the fall of 1932 plaintiff claims to have made with Mrs. Hoskins a new agreement, contractual in nature, upon which this suit is based. The claim is that the parties then "entered into a different or modified agreement, whereby the Appellant, in consideration of the promise of said Anne L. Hoskins to make a will, or by some other method, to leave her property to Appellant, if she would move to the home of decedent, remain on duty continuously twenty-four hours each day, nurse, comfort, care for, and be to decedent as a daughter, remain and live with decedent until her death, take the place of her loved ones who had passed on, and in case decedent's money was not sufficient, or became exhausted, that Appellant should use her own money for their support. Under this modified agreement, there was no fixed wage, although Mrs. Hoskins was to continue to pay Appellant amounts, from month to month, to be fixed or determined by herself, and did thereafter pay her varying amounts, monthly, in all aggregating approximately Eight Hundred Dollars ($800.00) less for the period, than the amount would have been had she paid Appellant $28.00 per week, as originally agreed."

There is no question that plaintiff was a faithful and efficient nurse, nor that a very close relationship of mutual affection and confidence grew up between her and her patient. There is no question either that conversations took place between them, the general purport of which was as claimed by plaintiff. So we assume without deciding that the evidence would have supported a finding for plaintiff. We are unable to say, however, that the contrary decision reached below is not also adequately sustained. For that reason we must and do affirm.

Plaintiff was not permitted to testify as to any of the conversations with Mrs. Hoskins upon which her claim is based. But if there was a contract, no one had more active and interested knowledge of it than herself. Her conduct immediately after the death of her patient is open to the construction, adopted below, of a per-

suasive admission that, whatever the understanding between herself and Mrs. Hoskins, there was no contract. Among other things, this is what happened shortly after the funeral. Mr. Case and Mr. Nordin, of counsel for defendants, went to the Hoskins home. Mr. Nordin later became administrator of the estate. They spent from one to two hours in the house examining things there and making a special search for documents, including a possible will. Plaintiff assisted them. She turned over all papers which the gentlemen wanted. Among them were promissory notes, later collected, for $4,000.

Plaintiff did not then, nor did she until much later, suggest that the property of Mrs. Hoskins was hers, under contract or otherwise. She did tell the lawyers that some items of personal property had been given by Mrs. Hoskins to others. She did tell them that her patient had given her a gold watch and chain as a Christmas present. To that extent she affirmed that a gift had been made and that property had become hers in consequence. She made no claim of ownership or other right at that time nor, as far as the record discloses, until some time afterwards. Wages, at what could be found to have been agreed rates, were paid plaintiff by Mrs. Hoskins until very shortly before the latter's death. Thereafter there is evidence that plaintiff claimed there was still "due" her a balance for a month or a part of a month.

Further relation of evidentiary details is unnecessary to indicate the basis for our conclusion. The solution of the fact issue against plaintiff cannot be disturbed. Upon her was the burden to show, by "full and satisfactory proof of the fact," the contract and "its terms." Brasch v. Reeves, 124 Minn. 114, 116, 144 N. W. 744, 745.

Mere conversations, or even, in some similar cases, agreements, are not sufficient to make a case for the plaintiff. It is a contract that must be proved. As we observed in Carlson v. Krantz, 172 Minn. 242, 214 N. W. 928, 54 A. L. R. 545, words may have a contractual sound, yet, if the speakers do not intend to assume contractual obligation, no contract results. In such a case the result either of contract or no contract is ordinarily an issue of fact, the

decision of which either way by the trier of facts will be sustained on appeal if there is evidence reasonably supporting it.

The order under review is affirmed.